IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAPER, ALLIED-INDUSTRIAL, CHEMICAL &
ENERGY WORKERS INTERNATIONAL UNION
AND ITS LOCAL 5-276

        Plaintiffs,

v.                          //    CIVIL ACTION NO. 1:04CV7
                                    (Judge Keeley)

UCAR CARBON COMPANY, INC.,
CLARKSBURG WORKS

        Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on cross-motions for summary judgment. Because the plaintiffs have no standing to bring this action, the Court **GRANTS** the defendant's motion and **DENIES** the motion of the plaintiffs.

## I. INTRODUCTION[1]

In this case the Court must determine whether a union may invoke a "grievance and arbitration" clause of a Collective Bargaining Agreement ("CBA") on behalf of former employees who retired prior to the CBA's effective date. The parties have stipulated that there are no disputed facts.

The plaintiffs, Paper, Allied-Industrial, Chemical and Energy Workers International Union and its Local 5-276 ("PACE"), and the

---

[1]The following facts are taken from the parties's motions for summary judgment and accompanying exhibits.

**Paper, Allied-Industrial, et al.  v. UCAR**                       **1:04CV7**

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

defendant, UCAR Carbon Company, Inc., Clarksburg Works ("UCAR"), have a longstanding collective bargaining relationship. They are parties to a CBA that, from April 9, 2001 through June 20, 2004, addressed the employment terms and conditions of a unit of UCAR's employees whose interests PACE exclusively represents. Article XII of this CBA, the "grievance and arbitration clause," provides a four-step procedure for the final and binding resolution of disputes over interpretations or violations of the contract. The "First Step" consists of a meeting between an employee, his steward and the foreman of the department. If this meeting does not resolve the grievance, the "Second Step" requires that it be presented in writing to a designated representative of UCAR for settlement by the Grievance Committee. If this meeting fails, the "Third Step" provides for a final meeting between the Grievance Committee, a PACE International Representative and a UCAR-designated representative. If the grievance remains unresolved after the "Third Step" meeting, the "Fourth Step" gives either party the authority to refer the grievance to arbitration.

Prior to April, 2003, UCAR initiated changes to its retiree health care plan for persons who retired prior to April 9, 2001, the effective date of the CBA at issue. On April 1, 2003, PACE filed a grievance under the "grievance and arbitration clause" of the

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

April 9, 2001 CBA, challenging UCAR's "dropping of medicare supplement and raising medical contribution." After an unsuccessful "First Step," PACE proceeded to the "Second Step" meeting, where the UCAR denied the grievance after determining that a retired employee whose contract has expired is a non-union employee who is not covered by the current CBA, and is, therefore, "outside the existing [CBA], including the grievance process."

On July 16, 2003, an international PACE representative, Larry J. Ramsey ("Ramsey"), requested a "Third Step" meeting. This request was denied by UCAR's HR Graphite Specialties Machining Manager, Andy Peyatt ("Peyatt"), on the ground that employees who retired prior to April 9, 2001, are not protected by the existing CBA and not subject to the grievance and arbitration process. Peyatt offered to discuss the matter with Ramsey outside the grievance process. On August 1, 2003, Ramsey contacted Peyatt to acknowledge his receipt of Peyatt's letter and to express dissatisfaction with UCAR's position. Ramsey agreed to meet with Peyatt to discuss the issue.

Subsequently, on January 23, 2004, PACE filed a complaint in this Court to compel the defendants to arbitrate the grievance pursuant to the terms of the April 9, 2001 CBA. UCAR argues, however, that PACE has no standing to bring this action because

3

former employees who retired prior to April 9, 2001, have no vested contractual rights in the April 9, 2001 CBA, including the right to have a grievance processed on their behalf. For the reasons that follow, this Court agrees with UCAR.

## II. DISCUSSION

In order to have standing under Article III of the Constitution, a plaintiff

> must have suffered an injury in fact, i.e., 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' Second, [the plaintiff's] injuries must be fairly traceable to the actions of the Defendants, rather than the result of actions by some independent third party not before the court. Third, it must be likely, as opposed to merely speculative, that [the plaintiff's] injuries will be redressed by a favorable decision."

Dixon v. Edwards, 290 F.3d 609, 711 (4th Cir. 2002) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Because the standing inquiry also involves prudential concerns, a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975).

"The obligation to invoke grievance procedures is a matter of contract." Anderson v. Alpha Portland Indus., 752 F.2d 1293, 1295

(8th Cir. 1985). <u>See</u> <u>Schneider Moving & Storage Co. v. Robbins</u>, 466 U.S. 364 (1984). Generally, a union has standing to arbitrate the meaning of CBAs that grant rights to third parties because the union is a party to the contract and negotiates the CBA as the exclusive bargaining representative of a "bargaining unit" of employees. <u>Rossetto v. Pabst Brewing Co.</u>, 128 F.3d 538, 539-40 (7th Cir. 1997).

Retirees may elect to have their interests represented by a union through class action certification. <u>Rosetto</u>, 128 F.3d at 541. <u>See</u> <u>also</u> <u>District 17, Dist. 29, Local Union 7113, & Local Union 6023, United Mine Workers v. Allied Corp.</u>, 735 F.2d 121 (4th Cir. 1984) (suit brought by class consisting of some 190 retirees). They are not considered "employees" that are part of a "bargaining unit," however, because they "do not have a sufficient interest to warrant participation in the election of a collective-bargaining agent." <u>Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.</u>, 404 U.S. 157, 172 (1971) (holding that retired employees must negotiate with their employer individually because active and retired employees "do not share a community of interests broad enough to justify inclusion of the retirees in the bargaining unit."). <u>See</u> <u>also</u> <u>Anderson</u>, 752 F.2d at 1297 (8th Cir. 1985) ("a union . . . is not the exclusive bargaining representative for retirees even when . . . the insurance benefits

modified by the company originally had been established through collective bargaining.").

Placing retirees outside of the bargaining unit "acknowledges the potential for conflict between the interests of retirees and the interests of active employees." Rosetto, 128 F.3d at 538 (holding that a union does not have standing to invoke CBA "grievance and arbitration clause" on behalf of retirees). See Allied Chem., 404 U.S. at 172 ("[i]ncorporation of such a limited-purpose constituency in the bargaining unit would create the potential for severe internal conflicts that would impair the unit's ability to function and would disrupt the processes of collective bargaining.") Moreover, as the Seventh Circuit stated in Rosetta, to allow unions to bring suit or arbitrate on behalf of a class of retirees without class action certification would foreclose retirees from exercising their individual statutory rights under the Employee Retirement Income Security Act. 128 F.3d at 540.

In this case, PACE cannot compel arbitration under the "grievance and arbitration clause" of the 2001 CBA because UCAR's pre-April 9, 2001 retirees have no vested rights under that contract. See Rosetto, 128 F.3d at 539-40. Moreover, these retirees have not consented to allow PACE to represent their interests as a class. Accordingly, PACE has no standing to bring

suit on behalf of the retirees, and the Court, therefore, lacks subject matter jurisdiction of this case. To hold otherwise would result in a final ruling that binds an entire class of retirees whose interests PACE is not authorized to represent.

### III. CONCLUSION

Because PACE does not have standing, this Court cannot exercise subject matter jurisdiction over this law suit. The Court, therefore, **GRANTS** defendant's motion for summary judgment (dckt. no. 20) and **DENIES** the plaintiffs's motion for summary judgment (dckt. no. 18). The case is **DISMISSED WITH PREJUDICE.**

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: April _____25_____, 2005.

IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE